IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | | |
|---|---|---|
| BRANT T. GRAHAM, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION NO: 1:04-CV-650 |
| | § | |
| LOUISIANA PACIFIC CORP., | § | JUDGE RON CLARK |
| | § | |
| *Defendant.* | § | |
| | § | |

**ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Before the court is Defendant's Motion for Summary Judgment [Doc. #34].  Plaintiff has responded.  Defendant asserts that Plaintiff has no viable cause of action under Texas law and was not constructively discharged.  Plaintiff contends he was constructively discharged for refusing to violate certain environmental laws.  Because there are factual disputes regarding certain documents, and because determination of material facts depends upon the credibility of the witnesses, the court denies the motion for summary judgment.

**I.  Introduction**

Plaintiff Brant Graham ("Graham") filed suit in state court and Defendant Louisiana Pacific Corporation ("Louisiana Pacific or LP") removed October 14, 2004.  Graham's claim centers around his employment as a Plant Environmental Manager and the alleged termination that occurred in September of 2002.

Plaintiff alleges that he was instructed to make false CEA101 reports about environmental abuses and destroy certain files; according to Graham, he was constructively discharged after he

1

refused to follow illegal orders.   Defendant denies these allegations and asserts that Plaintiff

voluntarily resigned of his own free will from LP on September 19, 2002.

## II.  Standard of Review

The party moving for summary judgment under Fed. R. Civ. P. 56 has the initial burden of

demonstrating that there is no genuine issue as to any material fact and that it is entitled to judgment

as a matter of law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S. Ct. 2505, 2514

(1986).  Movant may show that the undisputed material facts affirmatively establish a right to

judgment.  Alternatively, movant may establish that the other party has the burden of proof at trial,

and has failed to  "make a showing sufficient to establish the existence of an element essential to

[its] case."  *Nebraska v. Wyoming*, 507 U.S. 584, 590, 113 S. Ct. 1689 (1993) (quoting *Celotex

Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 2522 (1986)).  In order to avoid summary

judgment, the  party opposing the motion must come forward with competent summary judgment

evidence of the existence of a genuine fact issue.  *See Matsushita Elec. Indus. Co. v. Zenith Radio

Corp.*, 475 U.S. 574, 585-86, 106 S. Ct. 1348, 1335  (1986);  *Anderson*, 477 U.S. at 257, 106 S. Ct.

at 2514.  The nonmoving party  "must do more than simply show that there is some metaphysical

doubt as to the material facts."  *Matsushita,* 475 U.S. at 586, 106 S. Ct. at 1356.   Fed. R. Civ.  P.

56 requires that the nonmoving party set forth specific facts showing that there is a genuine issue

for trial.  *Anderson,* 477 U.S. at 256, 106 S. Ct. at 2514.  Only a genuine dispute over a material fact

(a fact which might affect the outcome of the suit under the governing substantive law) will preclude

summary judgment.  *Anderson*,  477 U.S. at 248 106 S. Ct. at 2510.  The dispute is genuine if the

evidence is such that a  reasonable jury could return a verdict for the nonmoving party on the issue.

*Id.*  If the factual context renders a claim implausible (for example if the claim simply makes no

economic sense)  nonmovants "must come forward with more persuasive evidence to support their claim than would otherwise be necessary.  *Matsushita*, 475 U.S. at 587, 106 S. Ct. at 1356.

Fed. R. Civ. P. 56(c) requires the court to look at the full record, including the pleadings, depositions, answers to interrogatories, admissions, and affidavits.  All reasonable inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion, and any doubt must be resolved in its favor.  *Matsushita*, 475 U.S. at 587, 106 S. Ct. at 1356.  However, only *reasonable* inferences in favor of the nonmoving party can be drawn from the evidence.  *Eastman Kodak Co. v. Image Tech. Servs., Inc.*, 504 U.S. 451, 468, 112 S. Ct. 2072, 2083 (1992).

## III.  ANALYSIS

This is a diversity case.  The court must therefore conduct an *Erie* analysis of Texas law to determine how a Texas court would rule.  To prevail on his claim of constructive discharge for refusal to follow an illegal order, Graham must show:

(1) that he was constructively discharged;

(2) that he was constructively discharged for the sole reason that he refused to perform an act; and

(3) that the act he refused to perform carried criminal penalties.

*Nguyen v. Tech. & Scientific Application, Inc.*, 981 S.W.2d 900, 901 (Tex. App. Houston [1] 1998, no writ).  Because fact issues exist as to each element of Graham's claim, LP's motion for summary judgment must be denied.

*A. The At-Will Employment Doctrine and the Sabine Pilot Exception*

3

Long-settled Texas law allows employment for an indefinite period to be terminated at will, without cause. *Tex. Farm Bureau Mut. Ins. Cos. v. Sears*, 84 S.W.3d 604, 608 (Tex.2002); *Burt v. City of Burkburnett*, 800 S.W.2d 625, 626 (Tex. App. - Fort Worth 1990, writ denied); *Simmons Airlines v. Lagrotte*, 50 S.W.3d 748, 751-52 (Tex. App. - Dallas 2001, pet. denied). In *Sabine Pilot*, the Texas Supreme Court created a "narrow exception" to the termination-at-will policy. *Sabine Pilot Serv., Inc. v. Hauck*, 687 S.W.2d 733, 735 (Tex. 1985). Under the *Sabine Pilot* exception, an employee may maintain a common law claim for wrongful termination if the sole reason for the employee's termination was his refusal to perform an illegal act. *Id.* In other words, an employee may recover if he was "unacceptably forced to choose between risking criminal liability or being discharged." *Id.* Civil liability or civil penalties alone are insufficient to trigger the *Sabine Pilot* exception. *Hancock v. Express One Int'l, Inc.*, 800 S.W. 2d 634, 636 (Tex. App. - Dallas 1990, writ denied).

### B. Constructive Discharge

Although LP claims that Graham's letter of resignation bars any possible claim of wrongful termination, the *Sabine Pilot* exception can apply when an employee is constructively discharged. *Nguyen*, 981 S.W.2d at 901 ("the *Sabine Pilot* exception to the 'employment at will' doctrine applies to employees who are constructively discharged"). If an employee is forced to resign for the sole reason that he refused to perform an illegal act, he may pursue a cause of action for wrongful termination. *Id.*

To show constructive discharge, a former employee must demonstrate that an employer has made conditions so intolerable that an employee reasonably feels compelled to resign. *Nguyen*, 981 S.W.2d at 901; *Boze v. Branstetter*, 912 F.2d 801, 804 (5th Cir. 1990); *Suttles v. U.S. Postal Serv.*,

927 F. Supp. 990, 1011 (S.D. Tex. 1996).  LP has argued that Graham's failure to use internal corporate reporting policies was unreasonable.

Graham has produced evidence, which, if believed, could establish that he was about to be fired, that being fired would preclude his future employment in the field for which he was trained, and that he had no choice but to resign when he did, if he hoped to find work for some other employer as an environmental engineer.  *See* Plaintiff's Response to Motion for Summary Judgment, Exhibit A-Graham Aff., para. 4 and 5.  LP has produced no incontrovertible evidence to rebut Graham's affidavit.  Taking Graham's evidence as true, a jury might conclude that a reasonable employee would have felt compelled to resign immediately.  In light of this evidence (which is disputed by LP) Graham's failure to use internal reporting procedures is relevant evidence about whether Graham was forced to resign, but it is not dispositive of Graham's claim.

### C.  The Sole Reason for Graham's Discharge

Graham has produced evidence, in the form of his affidavit, that he was an exemplary employee before his refusal to perform the allegedly illegal activity.  LP has produced evidence that Graham faced "mounting pressure" because of "job performance difficulties and was increasingly criticized by his supervisors for his poor performance."  The actual documentation of those alleged problems post-dates Graham's refusal to complete the CEA101.  Although LP's witnesses have produced affidavits that Graham's performance was consistently poor, the only contemporaneous documents were created barely a month before Graham's resignation – during the time when Graham alleges LP was forcing him to resign.[1]  That evidence might be construed by the fact finder

---

[1]

LP has offered only two exhibits that document Graham's alleged problems and predate his September 2002 resignation. LP's exhibits 2A and 3B are identical copies of an August 13, 2002 memo from Jeff Yelle to John Joyce; the same bates stamp number.  LP's exhibit 3C is the performance agreement plan signed by Graham on August 26, 2002.  Their other

the true reason Graham quit or, alternatively, as part of a paper trail being laid in anticipation of Graham's termination.  The determination will be based upon the credibility of Graham and other witnesses.

LP also argues that the reasons stated in Graham's letter of resignation constitute additional reasons he resigned, thus precluding its alleged unlawful demand from acting as the "sole reason" that Graham was constructively discharged.  In his letter of resignation, Graham said that he was resigning due *"in part"* to *"lack of commitment/support from management with regard to Environmental Compliance,"* "failure to provide training," "lack of support/communications..." and "poor health relating to stress from above."  Defendant's Motion for Summary Judgment, Exhibit 1A (emphasis added).  The "sole reason" requirement of the *Sabine Pilot* exception applies to the employer's decision to constructively discharge an employee.  It does not therefore follow that an employee must acknowledge that reason for his discharge in a letter of resignation.  The letter is evidence that supports LP's argument, but it does not conclusively establish that Graham can not prove this element of his case.  A jury must decide whom to believe.  The court is not going to make credibility determinations at the summary judgment stage.

*D. Violations of Environmental Laws Carry Criminal Penalties.*

Graham has alleged that LP conspired to violate environmental law.  If his pleadings are true, LP sought to conceal violations of the Clean Air Act, 42 U.S.C. §§ 7401, as well as other laws. Violations of the CAA can result in up to five years in prison.  42 U.S.C. § 7413(c).  At least two Texas courts, in considering *Sabine Pilot* claims, have said criminal liability would attach to anyone who abetted a corporation's efforts to deceive government regulators.  For that reason, those courts

---

exhibits are either generic corporate documents that outline corporate documents, or documents made specifically for this lawsuit.

held that a refusal to fill out internal documents that would be used to deceive regulators could trigger the *Sabine Pilot* exception. *Higgenbotham v. Allwaste, Inc.*, 889 S.W.2d 411, 412 (Tex. App. - Houston [14th] 1994, writ denied); *Morales v. Simuflite Training Int'l, Inc.*, 132 S.W.3d 603, 609 (Tex. App. - Fort Worth 2004, no writ)

  In the case now before the court, Graham has produced summary judgment evidence, which, if believed, could establish that the CEA101 report he was asked to file would be used for the  direct purpose of misleading the EPA, just as the defendants in *Higgenbotham* and *Morales* were allegedly attempting to mislead the SEC and the FAA, respectively.  The court can not decide whether or not LP was actually engaged in a conspiracy to cover up its environmental violations in a summary judgment procedure.  *See Higgenbotham*, 889 S.W.2d at 416.  The appropriate means to determine whether Graham's conduct would have misled the EPA and aided a conspiracy to conceal serious environmental regulation violations is by an examination of documentary evidence,  considering fact and expert witness testimony, and then weighing the credibility of all of this evidence. That is the job of the trier of fact.

## IV. Conclusion

  LP has presented a long and detailed chronology of events.  If that chronology is to believed, it is entirely blameless, and none of its employees have broken the law in any way, shape, or form. However, Graham's affidavit and summary judgment evidence, if believed, contradict LP's version of the events.

  A jury, as the trier of fact, will have the discretion and authority to decide which version of events is true.  The court, in considering a motion for summary judgment, has no such discretion. For these reasons, LP's motion for summary judgment must be denied.

**IT IS THEREFORE ORDERED** that Defendant Louisiana Pacific's Motion for Summary Judgment [Doc. #34] is hereby **DENIED.**

So **ORDERED** and **SIGNED** this **21** day of **February, 2006.**

_____
Ron Clark, United States District Judge

8